UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHELL OIL COMPANY, n/k/a SHELL USA, INC.**<br><br>v.<br><br>**RIVER PARISH MAINTENANCE, INC.; ZURICH AMERICAN INSURANCE COMPANY; and CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON and VARIOUS LONDON MARKET INSURERS** | **Civil Action No.** |

## COMPLAINT

Plaintiff Shell Oil Company, now known as Shell USA, Inc. ("Plaintiff" or "Shell"), by and through undersigned counsel, hereby brings this complaint against defendants Certain Underwriters at Lloyd's, London ("Lloyd's Underwriters"); Various London Market Companies ("London Market Insurers"); and Zurich American Insurance Company ("Zurich") (collectively, "Insurers" or "Insurer Defendants"); and River Maintenance Parish, Inc. ("RPM"). Plaintiff states and alleges as follows:

### NATURE OF THE ACTION

1. By this action, plaintiff seeks damages for breach of contract against defendant RPM and defendant Insurers, as specified herein.

2. This action also seeks declaratory judgment that insurance policies issued or subscribed by the defendant Insurers provide coverage to plaintiff for liability arising out of an underlying asbestos bodily injury lawsuit.

1

## **PARTIES**

3.  Plaintiff Shell is a corporation organized under the laws of the State of Delaware with its principal place of business located in the State of Texas.

4.  Plaintiff is informed and believe that defendant RPM is a corporation organized under the laws of the State of Louisiana with its principal place of business in Hahnville, Louisiana.

5.  Plaintiff is informed and believe that defendants Lloyd's Underwriters, and any and all London Market Insurers that participated in or subscribed to any of the policies at issue in this action, are an association of underwriters and individual insurance companies existing under the laws of the United Kingdom or another foreign sovereign with their principal place of business in London, England, that sold or subscribed to insurance policies covering RPM and plaintiff (generally referred to herein as "Lloyd's Underwriters and London Market Insurers").  At all times relevant hereto, defendants Lloyd's Underwriters and London Market Insurers were authorized, through their respective agents, to underwrite insurance policies covering risks in the State of Louisiana and elsewhere.  Defendants Lloyd's Underwriters and London Market Insurers agreed further that "in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal."  Moreover, defendants Lloyd's Underwriters and London Market Insurers, and all defendant insurers which issued follow form policies or otherwise incorporate the "service of suit" language in the Lloyd's Underwriters and London Market Insurer policies by the terms of the policies issued and subscribed by them, have consented to the jurisdiction of this Court.  In pertinent part, the Lloyd's Underwriters and London Market Insurer policies, and all defendant insurers that issued follow form coverage policies to the same, contain the following service of suit clause:

> It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

By virtue of the foregoing service of suit clause, Lloyd's Underwriters and London Market Insurers, and the following form defendant insurers agreed to the jurisdiction of this Court, agreed to comply with all requirements necessary to give this Court jurisdiction, and further agreed that all matters pertinent to the instant dispute shall be determined by this Court. The portion of the "service of suit" clause which states that "all matters arising hereunder shall be determined in accordance with the law and practice of such Court" is a valid "choice of forum" clause.

6.      Plaintiff is informed and believes that defendant Zurich is a corporation organized under the laws of the State of New York with its principal place of business located in the State of Illinois, that sold or subscribed to insurance policies covering plaintiff in the State of Louisiana. At all times relevant hereto, Zurich was authorized, through its agents, to underwrite insurance policies covering risks in Louisiana and elsewhere.

## VENUE AND JURISDICTION

7.      The United States District Court for the Eastern District of Louisiana is a proper venue for this matter pursuant to 28 U.S.C. § 1391 because it is the judicial district in which a substantial part of the events giving rise to the claim occurred.

8.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## FACTUAL BACKGROUND

### Contracts between Shell and RPM

9. Defendant RPM was a contractor for the Shell Oil Company facility in Norco, Louisiana at various times, including between 1984 and 1988.

10. The contractual agreement between plaintiff Shell and defendant RPM required RPM to indemnify Shell for bodily injury actions arising out of RPM's contracted work at Shell.

11. The contractual agreement between plaintiff Shell and defendant RPM also required contractors that performed work on Shell's premises, including defendant RPM, to procure and maintain, at its own expense, certain insurance with insurance companies acceptable to Shell, including general liability insurance, to protect Shell.

### The Insurance Policies

12. On information and belief, Zurich issued primary general liability coverage to defendant RPM at least for the policy period June 1, 1984 through June 1, 1985 ("The Zurich Policy"). The Zurich Policy has standard terms and conditions. It is the burden of Zurich to prove any limitation or exclusion of coverage.

13. On information and belief, defendants Lloyd's Underwriters and the London Market Insurers issued general liability coverage to defendant RPM at least for the policy periods June 6, 1986 through June 1, 1988 ("The Lloyd's Policies"). The Lloyd's Policies have standard terms and conditions. It is the burden of Lloyd's to prove any limitation or exclusion of coverage.

14. On information and belief, Shell was required to be identified and was identified as an additional insured in both the Zurich Policy and the Lloyd's Policies.

The Underlying Serven Asbestos Suit Settlement

15. On May 17, 2019, a former employee of defendant RPM, Tony Serven, filed suit against Shell, RPM, Anco Insulations, Inc., and the Cajun Company in the 29th Judicial District Court for St. Charles Parish, Louisiana in an action styled *Tony Serven, individually and on behalf of the Deceased, Kay Serven, v. Shell Oil Company, et al.*, No. 86,287 (29th Judicial District Ct. for the Parish of St. Charles).

16. The *Serven* suit alleged injury due to exposure to asbestos-containing products present in or during operations conducted in or at the Shell Oil Company facility in Norco, Louisiana between, at a minimum, 1984 and 1988.

17. Shell tendered the *Serven* lawsuit to RPM (and its insurers) and made an indemnity demand on defendants RPM, Zurich, and Lloyd's to settle the *Serven* claim within the contractual provision agreed to by RPM and within Zurich's and Lloyd's applicable policy limits. RPM, Zurich, and Lloyd's did not properly respond to Shell's demand for indemnification. RPM, Zurich, and Lloyd's abandoned Shell.

18. Shell ultimately resolved the *Serven* claims against it prior to trial for an amount deemed reasonable by Shell under all the facts, circumstances and risks faced by Shell in the case (the "*Serven* settlement").

19. To date, defendant RPM, Zuirch, and Lloyd's have failed to indemnify Shell for the costs to defend and indemnify the *Serven* suit.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT AGAINST DEFENDANT RPM: CONTRACTUAL INDEMNIFICATION

20. Plaintiff incorporates each of the allegations in the foregoing paragraphs by reference as if fully set forth herein.

21. Plaintiff Shell and defendant RPM entered into a contractual agreement. The contractual agreement obligates defendant RPM to indemnify Shell for loss or damage caused by any peril arising out of RPM's work at the Shell facility.

22. Plaintiff Shell performed each and every act required to be performed by it in accordance with the terms and conditions of the contract entered into with defendant RPM.

23. Defendant RPM refused to honor its full contractual obligations to indemnify plaintiff Shell. Defendant RPM has breached its contractual indemnification obligations.

24. This conduct resulted in the withholding of contractual rights to which plaintiff Shell is entitled under the contract with defendant RPM.

25. As a result of defendant RPM's breach of contract, plaintiff Shell has been damaged in an amount to be determined at trial. Further, as a result of its breach, defendant RPM has waived, forfeited, and/or is estopped from asserting any contractual provision that would purportedly run in its favor.

### COUNT II: BREACH OF CONTRACT AGAINST DEFENDANT RPM: FAILURE TO PROCURE INSURANCE

26. Plaintiff incorporates each of the allegations in the foregoing paragraphs by reference as if fully set forth herein.

27. Plaintiff Shell and defendant RPM entered into a contractual agreement.

28. Upon information and belief, the contractual agreement obligated defendant RPM to procure appropriate general liability insurance coverage for plaintiff Shell.

29. Upon information and belief, defendant RPM breached its contractual obligation by failing to procure appropriate general liability insurance coverage for plaintiff Shell.

30. As a direct and proximate result of defendant RPM's breach of contract, plaintiff Shell has suffered direct, indirect and consequential damages in an amount to be determined at trial. *See* La. Civ. Code Ann. art. 1994.

31. Defendant RPM's failures have proximately caused monetary damages to Shell in the amount of at least the value of the settlement between Shell and the Serven claimants.

**COUNT III: DECLARATORY JUDGMENT AGAINST DEFENDANT INSURERS**

32. Plaintiff incorporates each of the allegations in the foregoing paragraphs by reference as if fully set forth herein.

33. Plaintiff Shell has a direct-action claim against defendant Insurers under La. R.S. § 22:1269.

34. Defendant RPM purchased the Zurich Policy and the Lloyd's Policies from the Insurers covering its potential liability as well as plaintiff Shell's potential liability because of bodily injury.

35. Both defendant RPM and plaintiff Shell have rights to assert claims under the Zurich Policy and the Lloyd's Policies.

36. The *Serven* settlement is covered under the Zurich Policy and the Lloyd's Policies as sums that the Insureds become legally obligated to pay as damages because of bodily injury caused by an occurrence.

37. The defendant Insurers do not accept that they provide coverage for the *Serven* settlement. Thus, there is a ripe and justiciable dispute regarding whether the Zurich Policy and the Lloyd's Policies cover the *Serven* settlement.

38. Plaintiff Shell seeks declaratory relief that the Zurich Policy and the Lloyd's Policies cover the *Serven* settlement.

## COUNT IV: BREACH OF CONTRACT AGAINST DEFENDANT INSURERS

39. Plaintiff incorporates each of the allegations in the foregoing paragraphs by reference as if fully set forth herein.

40. The Zurich Policy and the Lloyd's Policies provide coverage for the Serven settlement.

41. Plaintiff Shell and defendant RPM have performed each and every act required to be performed by them in accordance with the terms and conditions of the Zurich Policy and the Lloyd's Policies, except for those acts which Shell and/or RPM were prevented or excused from performing.

42. Shell tendered the *Serven* lawsuit to the defendant Insurers and demanded defense and indemnification from the defendant Insurers.

43. The defendant Insurers have refused to honor their full contractual obligations to defend and indemnify Shell.

44. This conduct resulted in the withholding of contractual rights to which plaintiff Shell is entitled under the Zurich Policy and the Lloyd's Policies. In doing so, the defendant Insurers have placed their own interests above those of their Insureds.

45. As a result of the defendant Insurers' breaches of contract, Shell has been damaged in an amount to be proven at trial. Further, as a result of their breaches of contract, the defendant Insurers

have waived, forfeited, and/or have been estopped from asserting any contractual provision that would purportedly run in their favor.

### COUNT V: TORT INDEMNITY CLAIM AGAINST DEFENDANTS

46. Plaintiff incorporates each of the allegations in the foregoing paragraphs by reference as if fully set forth herein.

47. Shell demands indemnification from Defendants.

48. Any fault of plaintiff Shell's is solely constructive or derivative. Defendants have caused such constructive liability to be imposed.

49. Serven's claim against Shell was not frivolous. Shell's settlement with Serven was reasonable, it was untainted by fraud or collusion, and Shell settled under a reasonable apprehension of liability.

50. Defendants' failures thus proximately caused monetary damages suffered by Shell in the amount of at least the value of the settlement between Shell and the Serven family.

51. Alternatively, Shell was actually liable and entered into a reasonable settlement with Serven.

### DEMAND FOR JURY TRIAL

52. Shell demands that this action be tried by jury.

### PRAYER FOR RELIEF

WHEREFORE, Shell Oil Company respectfully seeks, after due proceedings are conducted, the following:

1. Judgment against Defendants and in favor of plaintiff Shell Oil Company be entered on all claims asserted in this Petition;

2. Plaintiff also seeks the following declarations:

  (1)  The *Serven* settlement is the result of an occurrence under the Zurich Policy and the Lloyd's Policies;

  (2)  The defendant Insurers have an obligation to indemnify for loss from an occurrence covered under their policies;

  (3)  The Zurich Policy and the Lloyd's Policies cover in full the *Serven* settlement;

  (4)  The amount of the *Serven* settlement payable by defendant Insurers may not be reduced by any missing market or London Market insolvency, nor shall the Insured be responsible for the amounts subscribed by such missing markets or insolvent London Market Insurers.

3. Plaintiffs also seek costs of suit, attorneys' fees, pre- and post-judgment interest and penalties to the extent allowed by law; and

4. All other general and equitable relief to which Shell may be entitled under the facts and circumstances of this case.

           Respectfully submitted,

           */s/ Lauren Semlinger*
           LAUREN ANN McCULLOCH SEMLINGER (#33973)
           MORGAN, LEWIS & BOCKIUS, LLP
           1000 Louisiana Street, Suite 4000
           Houston, Texas 77002
           TEL: (713) 890-5467
           FAX: (713) 890-5001
           E-Mail: lmcculloch@morganlewis.com
           *Attorney for Shell Oil Company, now known as Shell USA, Inc.*